IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| William A. Doyle, an individual, | ) | OPINION |
| | ) | |
| Plaintiff and Appellant, | ) | Case No. 20100420-CA |
| | ) | |
| v. | ) | |
| | ) | F I L E D |
| Lehi City, a municipal corporation; | ) | (December 6, 2012) |
| Blythe Bray; Daniel Harrison; and | ) | |
| Amanda Len Mackintosh, | ) | 2012 UT App 342 |
| | ) | |
| Defendants and Appellees. | ) | |
| | ) | |

-----

Fourth District, Provo Department, 070402671
The Honorable Lynn W. Davis

Attorneys:     Justin D. Heideman, Provo, for Appellant
               David C. Richards and Sarah E. Spencer, Salt Lake City, for Appellee

-----

Before Judges Orme, McHugh, and Voros.

ORME, Judge:

¶1     William A. Doyle appeals the district court's grant of summary judgment in favor of Lehi City, Daniel Harrison, Blythe Bray, and Amanda Len Mackintosh (collectively, Appellees). Doyle claims that the district court erred in striking portions of affidavits he submitted in opposition to Appellees' motion for summary judgment, in concluding that Harrison and Bray were entitled to qualified immunity, and in determining that his notice of claim was inadequate, thereby barring his defamation and breach of contract causes of action. We affirm.

BACKGROUND

¶2     Lehi City, through its recreation department, offers a variety of sports programs to its residents, including a youth baseball program, at a sports facility known as the "Legacy Center."  At all times relevant to this case, Lehi employed Harrison as Director and Bray as Assistant Director of both the Lehi City Recreation Department and the Legacy Center.  Additionally, Lehi employed Mackintosh as a youth sports field supervisor during the 2006 youth baseball season. Doyle is well known in the Lehi City youth sports community, having volunteered as a coach for many years.

¶3     Before each youth sport season, the Legacy Center staff meets to discuss the need for changing any rules governing that sport.  The staff might alter a sport's governing rules for many reasons, such as improving efficiency, resolving scheduling issues, and addressing player or coach concerns.  The ultimate determination of which rules will be used each season falls within the discretion of the Lehi City Recreation Department.

¶4     Prior to the 2006 youth baseball season, the Legacy Center staff implemented various changes to the baseball league's governing rules.  Specifically, Lehi altered rules regarding the manner in which the league's player draft was carried out and how the league would choose a team as its representative in the state youth baseball tournament.

¶5     Doyle was selected as a volunteer coach for a team of nine- and ten-year-old boys during the 2006 "Pinto League" baseball season.  As a condition of coaching, Doyle filled out and signed a Volunteer Coach Application and Agreement (the Agreement), which contained a code of conduct.  The code of conduct required Doyle to follow all Lehi City policies and procedures while volunteering, practice good sportsmanship and fair play, provide safe playing instructions to his team, refrain from yelling and using profanity, and show respect to all players, coaches, officials, and spectators.  By signing the Agreement, Doyle agreed that "if [he] d[id] not abide by the Volunteer 'Code of Conduct' [he could] be removed as a volunteer, and [could] be prohibited from volunteering in the future."

¶6     In his capacity as a volunteer coach, Doyle was not compensated by the City, nor did he receive any other tangible benefit in exchange for his service.  Indeed, in the many years Doyle served as a volunteer coach, he never received any form of compensation from the City.

¶7     During the 2006 season, Doyle voiced his concerns to Legacy Center personnel about the rule changes that had been made. Doyle was particularly vocal about the changes to the youth baseball draft, contending that it "allowed certain teams to be unfairly stacked with an inordinate and disproportionate amount of talented players." Doyle also raised concerns to Bray about "other matters of fairness and safety" that he believed needed to be addressed. To gain support for his complaints, Doyle started a petition concerning Lehi City recreation programs and solicited signatures at the Legacy Center during baseball games.

¶8     Also during the 2006 season, Legacy Center personnel either observed or received reports from Mackintosh and others of Doyle becoming angry and yelling at Legacy Center employees, using profanity in front of players, and instructing his team to engage in rough tactics. Doyle questions the veracity of some of these reported incidents and alleges that Bray told him that Lehi City "needed more coaches" like him.

¶9     After the 2006 season, Bray met with Harrison to discuss Doyle's conduct during the season. Bray related to Harrison her observations and other reports she had received regarding incidents of Doyle behaving inappropriately. At that time, Bray and Harrison decided to take no action against Doyle; instead, they elected to wait and see whether Doyle applied to volunteer as a coach for the 2007 youth baseball season.

¶10     In March 2007, Doyle submitted a Volunteer Coach Application. Bray and Harrison met to determine what course of action to take. At Harrison's request, Bray prepared a list detailing Doyle's alleged inappropriate conduct during the 2006 season. Harrison also asked Bray to determine whether there were enough other volunteer applicants to cover all of the coaching spots for the 2007 youth baseball season. Bray confirmed that there were. Harrison and Bray then jointly decided that volunteers other than Doyle would be given the opportunity to coach.

¶11     Apparently as a courtesy to a long-time volunteer, Harrison called Doyle prior to the 2007 youth baseball season and asked him to come to his office to discuss the upcoming season.[1] During the meeting, Harrison reviewed for Doyle the list prepared

---

[1]Doyle did not have a contract with Lehi City, and no City regulation or policy required that the City afford a prospective volunteer a face-to-face meeting in declining

(continued...)

by Bray detailing the improper conduct Doyle allegedly engaged in during the 2006 season. Harrison then informed Doyle that as a result of his behavior, he had not been selected as a volunteer coach for the 2007 youth baseball season. Harrison informed Doyle, however, that he could apply to be considered as a youth baseball coach for the 2008 season.

¶12 Upset at not being selected as a volunteer coach for the 2007 season, Doyle requested a meeting with Lehi City Manager Jamie Davidson and Assistant City Manager Ron Foggin. This request was denied, but Lehi City Risk Manager Scott Sampson later called Doyle and informed him that the City was standing by Harrison and Bray's decision not to select Doyle as a coach for the 2007 season. Not long after the phone call, a billboard displaying a graphic of two skunks and the phrase "Something stinks in Lehi City Recreation" appeared along I-15 in Utah County. The billboard also directed viewers to a now-defunct website titled "www.citystinkers.com." Affidavits submitted by Appellees in support of their motion for summary judgment attributed the website to Doyle.

¶13 Doyle continued asking for a meeting to discuss his rejection as a volunteer coach, which was finally held on May 3, 2007. Doyle; Doyle's attorney; the Mayor of Lehi City, Howard Johnson, who happened also to be Doyle's father-in-law; Foggin; and Sampson all attended the meeting. City officials informed Doyle that if he agreed to take down the billboard and website, and improve his behavior, he could coach in the 2007 season. Doyle refused to do so, according to affidavits.[2]

¶14 A second meeting was held during which Doyle met with Lehi City officials, including the mayor and city manager. After this meeting, Lehi City representatives again informed Doyle that they were standing by their decision not to select him as a volunteer coach during the 2007 season but reiterated that he could reapply in 2008.

---

[1](...continued)
the services offered by a volunteer.

[2]After this meeting, Doyle also apparently sent several baked sheet cakes to various Lehi City departments, decorated with two skunks and the phrase "Something stinks in Lehi City Recreation."

¶15     Doyle subsequently filed suit.  In Doyle's complaint, he alleged numerous causes of action, including that the City, through Bray and Harrison, had violated his rights under the First and Fourteenth Amendments by denying him the opportunity to volunteer as a baseball coach during the 2007 season—a form of retaliation, Doyle alleges, for exercising his free speech rights to raise concerns about the management of the City's youth baseball program.  Further, Doyle alleged causes of action for defamation, breach of contract, and equitable estoppel.  Doyle also asked for attorney fees.  Appellees filed a motion for summary judgment, supported by several affidavits. In response, Doyle filed a memorandum opposing summary judgment along with various affidavits supporting his position.  Appellees then filed their reply memorandum and a motion to strike Doyle's affidavits.  The district court granted Appellees' motion to strike Doyle's affidavits in part, and thereafter granted summary judgment in Appellees' favor.  Doyle appeals.


ISSUES AND STANDARDS OF REVIEW

¶16     First, Doyle alleges that the district court erred in striking portions of affidavits he submitted in opposition to Appellees' summary judgment motion.  We ordinarily review a district court's decision to strike portions of an affidavit for an abuse of discretion.  *See Cabaness v. Thomas*, 2010 UT 23, ¶ 50, 232 P.3d 486.

¶17     Doyle next alleges that the district court erred in concluding on summary judgment that Bray and Harrison enjoyed qualified immunity from his First and Fourteenth Amendment claims, that he had no liberty or property interest in his volunteer position sufficient to maintain a due process challenge, and that Lehi City could not be held liable for any unconstitutional acts of its employees.  We review the district court's summary judgment decision, including its rulings regarding these constitutional issues, for correctness.  *See Chen v. Stewart*, 2004 UT 82, ¶ 25, 100 P.3d 1177.

¶18     Doyle also contends that the district court erred in concluding that he failed to comply with the notice of claim provision of the Governmental Immunity Act.  *See* Utah Code Ann. § 63G-7-401(3)(a)(ii) (2011).  Whether a notice of claim is adequate presents a question of law, which we review for correctness.  *See Thimmes v. Utah State Univ.*, 2001 UT App 93, ¶ 4, 22 P.3d 257.

## ANALYSIS

### I. Doyle's Stricken Affidavits

¶19    Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. *See* Utah R. Civ. P. 56(c). Doyle argues that if the district court had admitted his affidavits in their entirety, they would have demonstrated the existence of disputed facts, thereby defeating summary judgment. We note, however, that "the mere existence of genuine issues of fact . . . does not preclude the entry of summary judgment if those issues are immaterial to the resolution of the case." *Burns v. Cannondale Bicycle Co.*, 876 P.2d 415, 419 (Utah Ct. App. 1994) (omission in original) (citation and internal quotation marks omitted).

¶20    Here, even if we agreed that Doyle's affidavits were incorrectly stricken, the potential issues of fact they would raise are immaterial to the resolution of this case under the doctrine of qualified immunity, in the context of the Due Process Clause, and as to Doyle's municipal liability claim. Additionally, even if the district court had admitted the affidavits in their entirety, it would not affect our analysis of whether Doyle's amended notice of claim was adequate. Accordingly, we need not address the district court's decision striking portions of Doyle's affidavits.

### II. Doyle's Constitutional Claims

¶21    Doyle raises several constitutional issues. First, Doyle contends that the district court erred in concluding that Harrison and Bray enjoyed qualified immunity from Doyle's First Amendment retaliation claim. Doyle also alleges that the district court erred in rejecting his equal protection claim because other coaches in the Pinto League engaged in unsportsmanlike conduct without being disciplined as he was. Further, Doyle alleges that the district court erred in failing to analyze his procedural due process claim relating to the City's decision not to reappoint him to a volunteer coaching position. Finally, Doyle alleges that the district court should have addressed Lehi City's potential liability for the unconstitutional acts of its employees. We address each issue in turn.

A. Doyle's First Amendment Retaliation Claim

¶22    Doyle first contends that the district court erred in determining that his First Amendment retaliation claim against Harrison and Bray was barred by qualified immunity. "Qualified immunity shields [government] officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Courts may conduct this inquiry sequentially, or resolve a particular case on the second prong alone." *Barton v. Clancy*, 632 F.3d 9, 22 (1st Cir. 2011). *See also Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (explaining that courts are not required to address the prongs of the qualified immunity test in any particular order). Moreover, "once a defendant claims qualified immunity, the plaintiff always has the burden of proving that immunity is improper under the two-part test." *Peak Alarm Co., Inc. v. Salt Lake City Corp.*, 2010 UT 22, ¶ 41, 243 P.3d 1221. We are not convinced that Doyle's right, as an unpaid volunteer, to be free from retaliation for the exercise of his First Amendment rights was clearly established at the time Lehi City officials failed to reappoint him as a volunteer baseball coach for the 2007 season. Accordingly, we address only the "clearly established" prong of the qualified immunity test and need not decide whether Lehi City officials violated the right alleged by Doyle.[3]

¶23    "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft*, 131 S. Ct. at 2083 (alterations in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). *See also Peak Alarm*, 2010 UT 22, ¶ 55 ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [government official] that his conduct was unlawful under the circumstances presented."). To prove that a government official violates clearly established law does not "require a case directly on point, but existing precedent

_____

[3]In deciding to address only the second prong of the qualified immunity test, we heed the United States Supreme Court's caution that "[c]ourts should think carefully before expending 'scarce judicial resources' to resolve difficult and novel questions of constitutional or statutory interpretation that will 'have no effect on the outcome of the case.'" *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011) (citation omitted).

must have placed the . . . constitutional question beyond debate." *Ashcroft,* 131 S. Ct. at 2083. Doyle has not demonstrated that existing precedent places beyond debate the question of whether it was unconstitutional for Lehi City officials not to reappoint him as a volunteer youth baseball coach for the 2007 season because of his expressions of opinion.

¶24 Existing precedent is clear that the government "may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially his interest in freedom of speech." *Perry v. Snidermann*, 408 U.S. 593, 597 (1972). *Accord Barton v. Clancy*, 632 F.3d 9, 23 (1st Cir. 2011) (stating that "as a general matter, the government may not deprive an individual of a 'valuable government benefit[]' in retaliation for his or her exercise of First Amendment rights") (citation omitted). It is well established that public employment is a valuable government benefit and that the "State may not condition public employment on conditions that infringe on a public employee's right to free speech." *Cassidy v. Salt Lake Cnty. Fire Civil Serv. Council*, 1999 UT App 65, ¶ 20, 976 P.2d 607. Indeed, if Doyle were an employee of Lehi City and was fired because of his First Amendment-protected activities, we would apply the four-part test laid out in *Pickering v. Board of Education*, 391 U.S. 563 (1968), to determine whether Doyle had been unlawfully retaliated against for exercise of his free speech rights. *See Cassidy*, 1999 UT App 65, ¶¶ 24–27 (discussing when First Amendment scrutiny applies to an employee's claim of retaliation).

¶25 Nevertheless, Doyle makes no claim that he was at any time an employee of Lehi City. Indeed, Doyle has never received compensation for his service as a volunteer coach. Further, while Doyle claims that he was terminated from a position as a volunteer coach, we note that Doyle had to apply to coach prior to each youth baseball season. Thus, his alleged injury stemmed from Lehi City officials' decision not to select him as a volunteer for the 2007 youth baseball season on account of his expressing his unwelcome opinions. Accordingly, for Doyle to prevail, it must be "beyond debate," *see Ashcroft*, 131 S. Ct. at 2083, that the hope—or even expectancy—of an unpaid, seasonal volunteer position is a valuable government benefit or privilege, and that as a result, failure to appoint or reappoint an individual to that volunteer position due to the expression of opinions automatically triggers First Amendment scrutiny, *see Barton v. Clancy*, 632 F.3d 9, 27 (1st Cir. 2011). We conclude that this question "falls far short of that [beyond debate] threshold." *Ashcroft*, 131 S. Ct. at 2083. *See Clancy*, 632 F.3d at 27.

¶26    In support of his claim that Lehi City violated clearly established law, Doyle cites to *Andersen v. McCotter*, 100 F.3d 723 (10th Cir. 1996).  In that case, a *paid* intern working for the Utah Board of Pardons alleged that she was removed from her position because she gave a television interview critical of the Department of Corrections.  *See id.* at 725.  The Tenth Circuit held that because she was compensated for her work, the intern was, for all relevant purposes, a public employee.  *See id.* at 726.  Accordingly, the court determined that the intern had a protectible interest in her position with the board and applied the *Pickering* balancing test to determine whether the intern's termination violated her First Amendment rights.  *See id.* at 728.  The court also gratuitously noted that even if the intern was a volunteer, her claim "would not be defeated" because, the court determined, "[t]he exercise of free speech rights is not dependent upon the receipt of a full-time salary."  *Id.* at 727.  Because of this statement, Doyle contends that it had been clearly established at the time of his alleged injury that an unpaid volunteer is entitled to protection against retaliation based on the volunteer's First Amendment activities.  We disagree.

¶27    We first note that the *Andersen* decision is not binding on this court.  We are bound by the United States Supreme Court, the Utah Supreme Court, and our own precedent under stare decisis principles.  We are not bound, however, by decisions of the Tenth Circuit, an intermediate appellate court in the federal system.  *See Robertson v. Gem Ins. Co.*, 828 P.2d 496, 502 (Utah Ct. App. 1992).  Accordingly, *Andersen*'s only value as it pertains to this case lies in its persuasiveness or—as it happens—lack of persuasiveness.  *See id.*

¶28    We also note that the *Andersen* decision's statement regarding First Amendment protections being available to an unpaid volunteer is dicta.  *See Barton*, 632 F.3d at 26.  As the First Circuit noted in *Barton v. Clancy*, 632 F.3d 9 (1st Cir. 2011), *Andersen* rested solely upon the conclusion that the intern was a public employee, not a volunteer.  *See id.* at 25 (noting that although the Tenth Circuit in *Andersen* indicated that the intern's claim would not be defeated even if she was a volunteer, the court's decision actually relied on the "unremarkable position" that because the intern was a public employee she was entitled to First Amendment protection against retaliation).  We agree that the *Andersen* court's mention of a volunteer's right to First Amendment protections appears to be merely an aside and not "indispensable" to the court's reasoning.  *Cf. Bingham v. Roosevelt City Corp.*, 2010 UT 37, ¶ 23, 235 P.3d 730 (stating that dicta "never carrie[s] the force of law").  Thus, we are not convinced that *Andersen*, standing alone, places the constitutional issue "beyond debate."  *See Ashcroft*, 131 S. Ct. at 2083.

¶29    Even considering the *Andersen* decision in conjunction with other relevant authority, we are not convinced that it was clearly established at the time Lehi City officials prevented Doyle from volunteering that the failure to secure a volunteer position could form the basis of a First Amendment retaliation cause of action. Specifically, in addition to citing *Andersen*, Doyle refers to two decisions from federal circuit courts of appeal that have held that a volunteer position is a valuable government benefit.[4]  *See Hyland v. Wonder*, 972 F.2d 1129, 1136 (9th Cir. 1992); *Janusaitis v. Middlebury Volunteer Fire Dep't*, 607 F.2d 17, 25 (2d Cir. 1979).  We also note that one other federal circuit court has held that a volunteer position is a valuable government benefit, *see Mosely v. Board of Educ.*, 434 F.3d 527, 534–35  (7th Cir. 2006), while another has merely "assume[d], without deciding" that a volunteer position is a valuable government benefit, *see Versarge v. Township of Clinton*, 984 F.2d 1359, 1363 (3d Cir. 1993).  From our review, we conclude that the various cases relied on by Doyle, *Andersen* included, treat the loss of a volunteer position as a deprivation of a valuable government benefit based on different rationales and with varying levels of analysis. *See Barton*, 632 F.3d at 26–27 (reviewing the cases holding that a volunteer position is a valuable government benefit and identifying their differing rationales, discussing the depth of analysis in each case, and concluding from available precedent that "it was not clearly established that the loss of an unpaid volunteer position [can] form the basis of a First Amendment retaliation claim") (emphasis omitted).  As a result, we agree with the First Circuit that this "collection of precedent hardly amounts to the type of consensus . . . of persuasive authority that would preclude a misunderstanding as to the legality of non-reappointment of a volunteer."  *Id.* at 27 (omission in original) (citation

---

[4]Doyle also contends that United States Supreme Court precedent cited in *Andersen* "affirms the general principle that a governmental entity may [not] revoke a volunteer's position on a basis that infringes" his freedom of speech.  We note that while *Andersen* does cite to *Board of County Commissioners v. Umbehr*, 518 U.S. 668 (1996), in which the Supreme Court held that "our modern 'unconstitutional conditions' doctrine holds that the government 'may not deny a benefit to a person on a basis that infringes on his constitutionally protected . . . freedom of speech,'" *id.* at 674 (omission in original) (citation omitted), the *Umbehr* case deals with an independent contractor being retaliated against because of the contractor's First Amendment activities—not an individual being denied the opportunity to serve in an uncompensated, volunteer position, *see id.* at 678–79.

and internal quotation marks omitted).[5]  Thus, while *Andersen* and other decisions may provide some support for the notion that a volunteer position is a valuable government benefit, we see no controlling case in this jurisdiction stating as much, nor do we think—given their different rationales and varying levels of analysis—that the several cases outside of this jurisdiction supporting this position have definitively "placed the . . . constitutional question beyond debate."  *See Ashcroft*, 131 S. Ct. at 2083.

¶30     In any event, the cases Doyle cites, including *Andersen*, address only *removal* of an individual from a volunteer position, rather than the decision not to appoint—or even the decision not to reappoint—a volunteer.  *See Barton*, 632 F.3d at 27.  While this distinction has been deemed "immaterial" where the plaintiff is a public employee, *see, e.g., Perry v. Sindermann*, 408 U.S. 593, 597–98 (1972), Doyle has not called our attention to a case in which this rationale has been extended to an individual who was not appointed or reappointed to a volunteer position.  We agree with the First Circuit that "it does not necessarily follow" from the proscription on refusing to reappoint an *employee* based on the employee's expressive activities "that failure to reappoint a volunteer to a term position in retaliation for engaging in protected speech was also clearly established."  *Barton*, 632 F.3d at 27.

¶31     Accordingly, we conclude that Doyle has failed to demonstrate beyond debate that an unpaid, limited-term, volunteer position is a valuable government benefit, and that failure to appoint or reappoint an individual to such a position because of the prospective volunteer's exercise of his right to free speech triggers First Amendment scrutiny.  *See id.* at 26–27.  Thus, the law was not sufficiently clear that Lehi City officials would have understood that refusing to reappoint Doyle as a volunteer baseball coach in retaliation for his First Amendment-protected activities was unlawful.  *See id.*  It follows that the district court did not err in concluding that Harrison and Bray were immune from Doyle's First Amendment claim.

---

[5]We also note that the apparent lack of a case holding that a volunteer position is not a valuable government benefit is not dispositive, s*ee Barton v. Clancy*, 632 F.3d 9, 25–26 (1st Cir. 2011), given that the proposition urged by Doyle is, at a minimum, counterintuitive.

## B. Fourteenth Amendment Claim

¶32 Doyle next alleges that Lehi City officials violated his Fourteenth Amendment equal protection rights because although other coaches engaged in unsportsmanlike behavior, he was singled out and prevented from coaching because of his expressions of opinion. We conclude that the district court did not err in rejecting this claim.

¶33 When a governmental official is entitled to qualified immunity against a First Amendment claim and a plaintiff also alleges an equal protection claim derivative of that First Amendment claim, the governmental official has qualified immunity from the equal protection claim as well. *See Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1280 (10th Cir. 2009) (holding that because "the free speech right [at issue] 'was not clearly established regarding Plaintiff's activities,' . . . the individual defendants were similarly entitled to qualified immunity on the derivative equal protection and Fourth Amendment claims as well") (citation omitted). Thus, Harrison and Bray also have qualified immunity from Doyle's derivative equal protection claim. *See Ashcroft*, 131 S.Ct. at 1280.

## C. Due Process Claim

¶34 Doyle also alleges that the district court erred in failing to address his procedural due process claim because the court incorrectly concluded that he had no liberty or property interest in the volunteer coaching position. Even assuming, without deciding, that Doyle had a liberty or property interest in a volunteer youth baseball coaching position, his right to procedural due process was not violated.

¶35 The level of process an individual is due varies depending on the nature of the right the individual is in danger of losing. *See Worrall v. Ogden City Fire Dep't*, 616 P.2d 598, 602 (Utah 1980) ("Due process is not a technical conception with a fixed content unrelated to time, place, and circumstances; it is flexible and requires such procedural protections as the particular situation demands."). Before a governmental entity may terminate an employee with a right to continued employment, "minimum due process entitles [the] employee to oral or written notice of the charges, an explanation of the employer's evidence, and an opportunity for the employee to present his or her side of the story." *Lucas v. Murray City Civil Serv. Comm'n*, 949 P.2d 746, 753 (Utah Ct. App. 1997). We are convinced that the qualitatively different circumstance of an individual

not being appointed, or even reappointed, to a volunteer position requires much less process, if any at all, than in the government employment context.

¶36    Here, Doyle received notice that he was not being reappointed as a youth baseball coach before the 2007 season when he was called into Harrison's office and informed of the recreation department's decision.  During that meeting, Harrison outlined a list of reasons supporting the decision not to reappoint Doyle as a volunteer coach.  Later, on two different occasions, Doyle was able to meet with high-ranking Lehi City officials, including the mayor, to discuss his being passed over.  There is no indication that Doyle did not have ample opportunity at these meetings to present his side of the story.

¶37    Indeed, it appears that this series of meetings constituted more notice and a better opportunity to be heard than volunteers—and perhaps most prospective employees—would receive upon being denied a position.  Accordingly, even were we to assume, despite authority to the contrary, *see, e.g.*, *Hyland v. Wonder*, 972 F.2d 1129, 1140–43 (9th Cir. 1992), that Doyle had a liberty or property interest in an anticipated volunteer coaching position, given the significant notice and opportunity to be heard that Doyle received, he simply was not denied procedural due process.

D.  Municipal Liability for Lehi City

¶38    Doyle also alleges that Lehi City may be held liable for the unconstitutional acts of its employees because those acts were the result of an unlawful policy.  We conclude that this claim is inadequately briefed.[6]

¶39    Municipalities are not automatically liable for the unconstitutional acts of their employees under a respondeat superior theory.  *See Peak Alarm Co. v. Salt Lake City Corp.*, 2010 UT 22, ¶ 79, 243 P.3d 1221.  Rather, under 42 U.S.C. § 1983 a plaintiff must identify a municipal policy or custom that caused the plaintiff's injury before municipal liability for an employee's acts may be triggered.  *See Peak Alarm*, 2010 UT 22, ¶ 79.  Rather than fully develop his argument that Lehi City unconstitutionally denied him a

---

[6]In so stating, we do not mean to imply any fault on the part of Doyle's counsel. The inadequacy of briefing may well have more to do with the tenuous nature of the claim than a failure of briefing per se.

volunteer coaching position pursuant to a city policy or custom, Doyle merely points to the record where he raised this issue in his Memorandum in Opposition to Defendant's Motion for Summary Judgment. Our rules require that briefs "contain the contentions and reasons of the appellant with respect to the issues presented" and not mere citations to the record where arguments can be found. *See* Utah R. App. P. 24(a)(9).

¶40 Even upon reviewing Doyle's municipal liability argument as laid out in his Memorandum in Opposition to Defendant's Motion for Summary Judgment, we nevertheless conclude the claim is inadequately supported. Doyle cites to *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986), in which the Supreme Court held that "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Id.* at 480. Doyle alleges that Harrison, who denied Doyle the opportunity to volunteer during the 2007 season, conferred with Assistant City Manager Ron Foggin, who approved Harrison's decision. Thus, Doyle argues, this event constituted Lehi City policy and thereby exposed Lehi City to liability. We note, however, that whether the decision of an individual can be treated as a policy or custom of a municipality depends on whether that individual possessed "final policymaking authority." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989). Whether an individual possesses "final policymaking authority" is a question of state law. *See id.* Doyle's Memorandum merely asserts that Foggin has "final policymaking authority" but fails to explain how one may properly come to this conclusion. Thus, even according him some latitude in the application of our briefing requirements, we conclude that Doyle's municipal liability claim is inadequately briefed because he glosses over a key part of the requisite analysis. *See* Utah R. App. P. 24(a)(9); *Spencer v. Pleasant View City*, 2003 UT App 379, ¶ 21 n.8, 80 P.3d 546 (rejecting conclusory arguments as inadequately briefed). Accordingly, we do not further consider this argument.

### III. Amended Notice of Claim

¶41 Doyle next alleges that the district court erred in dismissing his defamation and breach of contract claims on the basis that his Amended Notice of Claim does not adequately describe those causes of action. The Governmental Immunity Act requires that "[a]ny person having a claim against a governmental entity, or against its employee for an act or omission occurring during the performance of the employee's duties . . . shall file a written notice of claim with the entity" setting forth "the nature of the claim asserted." Utah Code Ann. § 63G-7-401(3)(a)(ii) (2011). Doyle acknowledges that he

did not specifically mention his defamation and breach of contract claims in the "Nature of the Claim" section in his Amended Notice of Claim. He alleges, however, that specific identification is not necessary.

¶42     We agree with Doyle's basic contention that a plaintiff need not specifically mention each potential cause of action in the "nature of claim" section of his or her notice of claim. *See Cedar Prof'l Plaza, LC v. Cedar City Corp.*, 2006 UT App 36, ¶ 9, 131 P.3d 275 ("Nothing in the [Governmental Immunity] Act requires a claimant to set forth in the notice of claim each specific cause of action that might be pleaded against the government entity."). At the same time, we recognize that "strict compliance" with the notice of claim provision is required. *See Heideman v. Washington City*, 2007 UT App 11, ¶ 12, 155 P.3d 900 ("Failure to strictly comply with these requirements results in a lack of jurisdiction."). Given the tension between these two principles, a plaintiff complies with the mandate of informing a governmental entity of the "nature of the claim" asserted so long as the notice contains "enough specificity . . . to inform [the governmental entity] as to the nature of the claim so that the [governmental entity] can appraise its potential liability." *Id.* ¶ 14. Accordingly, as long as the legal theories underlying a plaintiff's subsequently pleaded causes of action are within the scope of the facts in the notice of claim such that it would have been reasonably clear to the governmental entity that the causes of action could potentially be pleaded, the plaintiff has adequately set forth "the nature of the claim[s] asserted." Utah Code Ann. § 63G-7-401(3)(a)(ii). *See Cedar Prof'l Plaza*, 2006 UT App 36, ¶ 10. But even under this somewhat generous application of the statute, we are not convinced that Doyle included enough facts pertaining to his defamation and breach of contract claims that it would have been clear to Lehi City that such causes of action could potentially be pleaded.

¶43     We first conclude that Doyle's Amended Notice of Claim failed to adequately inform Lehi City of his potential defamation claim. Specifically, we see no hint in the facts contained in the Amended Notice of Claim that Doyle could potentially raise a defamation claim in his complaint. Although specific mention of each potential claim is not required, *see id.* ¶ 9, the Notice does not identify defamation or any similar claims, as such, under the "Nature of the Claim Asserted" heading. Moreover, while the Notice contains a list of seven reasons why Doyle was denied the opportunity to volunteer, which presumably form the basis of Doyle's subsequent defamation cause of action, we see no indication in the Notice that the list includes false statements or a contention that one or more Lehi City officials who made false statements did so with any degree of

fault. *See Jacob v. Bezzant*, 2009 UT 37, ¶ 21, 212 P.3d 535 (listing the elements of a defamation claim, including the requirements that the statements be false and that the publisher of the statements have the "requisite degree of fault"). Finally, we see no words in the Notice commonly associated with the assertion of defamation claims such as "reputation." Thus, we conclude that the Notice would not have adequately informed Lehi City of Doyle's potential defamation claim.[7] *See Heideman*, 2007 UT App 11, ¶ 14.

¶44 We likewise conclude that the district court did not err in deciding that Doyle's Amended Notice of Claim did not adequately inform Lehi City of Doyle's potential breach of contract claim. As with his defamation claim, Doyle fails to identify his potential breach of contract claim, as such, under the "Nature of the Claim Asserted" heading in his Notice. While this is not dispositive for the reasons explained above, we are not convinced that the facts identified by Doyle would have informed Lehi City that he would likely plead a breach of contract cause of action. We acknowledge that Doyle indicated in his Amended Notice of Claim that Bray "affirmatively represented" on two separate occasions that Doyle would "definitely" coach a baseball team for the 2007 season and that Harrison later "changed his mind about the promise he gave" to Doyle that he could at least help in coaching a basketball team during the upcoming season. While these statements can be construed as identifying one step in contract formation, i.e., offer and maybe even acceptance, we see no indication in the Notice that the

---

[7]Even assuming that the Amended Notice of Claim somehow adequately informed Lehi City of the nature of his defamation claim, the statements claimed as defamatory in Doyle's Amended Complaint are not defamatory as a matter of law. "[A] statement is defamatory if it impeaches an individual's honesty, integrity, virtue, or reputation and thereby exposes the individual to public hatred, contempt, or ridicule." *Jacob v. Bezzant*, 2009 UT 37, ¶ 26, 212 P.3d 535 (citation and internal quotation marks omitted). It may well be that Doyle was embarrassed or annoyed by Mackintosh's statements that Doyle raised his voice on a number of occasions, used a common—and, by contemporary standards, rather mild—profanity in front of players, encouraged his team to engage in aggressive play, had a temper, and made scorekeeping his team's games an uncomfortable task. But even if the statements were false, we are not convinced that they would have exposed Doyle to public hatred, contempt, or ridicule, especially given the limited context in which these statements were allegedly published. *See generally West v. Thomson Newspapers*, 872 P.2d 999, 1009–11 (Utah 1994).

putative contract was supported by consideration.[8] Thus, the Amended Notice of Claim fails to adequately identify any contract that existed between Doyle and Lehi City, the first element of a breach of contract claim. *See Bair v. Axiom Design, LLC*, 2001 UT 20, ¶ 14, 20 P.3d 388. Accordingly, we are not convinced that it would have been reasonably clear to Lehi City from Doyle's Amended Notice of Claim that Doyle could potentially raise a breach of contract claim.[9]

¶45 In sum, we reject Doyle's contention that the district court erred in its decision to grant summary judgment with regard to the adequacy of Doyle's Amended Notice of Claim as concerns his defamation and breach of contract claims.

CONCLUSION

¶46 We first conclude that the district court did not err in applying qualified immunity to Harrison and Bray on Doyle's First Amendment claim. We likewise conclude that the district court did not err in rejecting Doyle's equal protection claim as it was entirely derivative of his First Amendment claim. We also conclude that even if entitled to procedural due process upon failing to be reappointed to a voluntary youth baseball position, Doyle received more than sufficient process under all the circumstances. We do not decide Doyle's claim that Lehi City is liable for the allegedly unconstitutional acts of its employees because this claim is inadequately briefed. Finally, we conclude that although precise recitation of his potential claims was not

---

[8]We also note that Doyle's promissory estoppel claim, based on a theory of detrimental reliance on the claimed promises, was rejected by the district court, and Doyle does not appeal that decision.

[9]It may well be that Doyle's breach of contract claim would not have been subject to the notice of claim requirement in the Governmental Immunity Act in any event. *See* Utah Code Ann. § 63G-7-301(1)(a) (2011) ("[I]mmunity from suit of each governmental entity is waived as to any contractual obligation."); *id.* § 63G-7-301(1)(b) (providing that "[a]ctions arising out of contractual rights or obligations are not subject" to the notice of claim requirement). However, we do not reach this issue because it was not raised below and has not been raised by the parties or briefed on appeal.

necessary, Doyle failed to adequately notify Lehi City of his potential defamation and breach of contract claims.

¶47    Affirmed.


_____
Gregory K. Orme, Judge


-----


¶48    WE CONCUR:


_____
Carolyn B. McHugh, Judge


_____
J. Frederic Voros Jr., Judge